UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| OFFICE FURNITURE RENTAL ALLIANCE, LLC,<br><br>      Plaintiff,<br><br>vs.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>      Defendant. | 3:11-cv-01889-JBA<br><br>Jury Trial Demanded<br><br>**FIRST AMENDED COMPLAINT**<br><br>December 31, 2012 |

Plaintiff Office Furniture Rental Alliance, LLC ("Office Furniture") files this First Amended Complaint for breach of contract, misrepresentation and reformation against the Defendant, Liberty Mutual Fire Insurance Company ("Liberty Mutual").

## PARTIES

1. Office Furniture is a Delaware Limited Liability Company with its principal place of business in East Hartford, Connecticut.

2. Upon information and belief, Liberty Mutual is a Wisconsin corporation with its principal place of business in Boston, Massachusetts.

## NATURE OF THE ACTION

3. This is an action for breach of contract, misrepresentation, and reformation concerning the parties' rights under a policy of insurance issued to Office Furniture by Liberty Mutual.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs.

5. Venue in this District is proper under 28 U.S.C. § 1391(a) and (c) because events and omissions giving rise to the controversy occurred in this District, and Defendant transacts business and is subject to personal jurisdiction in this District.

## **FACTS**

6. At all relevant times, Plaintiff has been in the business of selling and renting office furniture.

7. At all relevant times, Plaintiff has leased a number of warehouses in various locations around the country which store its inventories of furniture.

8. At all relevant times, Plaintiff has not had a risk manager on its staff or anyone else in its employ with insurance expertise.

9. Beginning in or about 1998, Plaintiff began a relationship with Defendant that continues to this day, in which Defendant has issued insurance policies to Plaintiff. During this period, Defendant has sold Plaintiff a variety of lines of insurance, including property insurance for the contents of Plaintiff's warehouses.

10. At all relevant times, Plaintiff purchased its insurance from Defendant through the same in-house insurance agent at Liberty Mutual, James LaVangie. Mr. LaVangie held himself out to Plaintiff as having expertise in advising companies about their insurance needs.

11. When Plaintiff first discussed its property insurance needs with Mr. LaVangie, in or around 1998, he recommended that the Plaintiff purchase "blanket" coverage from Defendant. He explained that blanket property insurance would insure each of the Plaintiff's various locations for up to a single, blanket aggregate limit that would far exceed the value of the insured property at any one location. He further explained to Plaintiff that blanket insurance was the most appropriate type of coverage

for Plaintiff's warehouses because the insured inventories at those locations changed constantly and it would be difficult to separately purchase sufficient insurance for each location based upon the value of the property at any time.  He further explained that Defendant would require from Plaintiff an estimate of the values of the property at each location for purposes of calculating a total insured value for all covered locations that would form the basis for underwriting the risk, arriving at a blanket limit of coverage to be provided and determining a premium to be charged.

12. Plaintiff accepted Defendant's recommendation and purchased a property insurance policy from Defendant with a blanket limit of coverage.

13. Every year thereafter, until 2001, Plaintiff renewed its blanket limit property insurance with Defendant.  Each year during this period, Defendant, through Mr. LaVangie, requested a statement of values for each of Plaintiff's insured locations, which Plaintiff provided.

14. In 2001, Plaintiff did not renew its property insurance coverage with Defendant because Defendant was late in providing a renewal quote, and the premium quoted was not competitive.  Nonetheless, Plaintiff continued to purchase other types of insurance policies for other risks from the Defendant at that time.

15. In 2002, Plaintiff decided to again place its property insurance with Defendant.  Plaintiff contacted Mr. LaVangie, who agreed on behalf of Defendant to provide the same type of property insurance coverage Defendant had issued to Plaintiff in the past.

16. As with the issuance of the earlier blanket policies, Defendant asked Plaintiff to provide property values for each of the locations to be insured, which

Plaintiff did. Defendant never told Plaintiff it would not issue the coverage on a blanket limit basis. Nevertheless, Defendant issued Plaintiff a policy which had no blanket limit, but instead had a separate limit of coverage for each insured location. Plaintiff was unaware that Defendant had not issued blanket coverage. Plaintiff did not read the entire insurance policy issued by Defendant because it did not expect there to be any changes in the type of coverage provided.

17.   Every year from 2003-2009 Plaintiff renewed its property insurance with Defendant with the understanding that it was being provided with the same coverage it had until 2001 and that it requested in 2002. Plaintiff was unaware that the property insurance policies issued to it by Defendant during this period did not provide blanket coverage. During this period Plaintiff continued to deal with Mr. LaVangie, who never told Plaintiff that its coverage was not being issued on a blanket basis. As in 2002, Plaintiff did not review the renewal policies and proposals issued to it by Defendant in an effort to determine whether the coverage was issued with a separate limit for each location because it had no reason to believe that the type of coverage provided had changed.

18.   On December 7, 2009, a fire occurred at Plaintiff's warehouse at 71 George Street, East Hartford, Connecticut, which caused extensive damage to the building and its contents (the "Fire").

19.   Plaintiff submitted a claim to Defendant for the physical damage to its property sustained in the fire. The claim was submitted under Defendant's Policy No. YU2-Z11-252641-089, which had a policy period of May 1, 2009 – May 1, 2010 (the "2009 Policy").

nydocs1-1001047.2

20. The claim submitted for Plaintiff's Fire loss totaled $5,234,579 gross value, which was then reduced to an actual cash value loss of $4,037,974. Defendant did not contest the accuracy of Plaintiff's calculation of its loss, but only paid $2,780,000, on the ground that the coverage under the Policy for the warehouse was subject to a location limit of that amount, plus $50,000 of additional expense.

### FIRST CAUSE OF ACTION, FOR BREACH OF CONTRACT

21. Plaintiff repeats and realleges the allegations of all of the preceding paragraphs as if fully set forth herein.

22. Defendant promised and offered to Plaintiff in 2002 to issue the same type of property insurance to Plaintiff that it had issued from 1998-2001, which was coverage with a blanket limit of liability. Thereafter, Defendant promised and offered to renew Plaintiff's coverage on the same basis for the policy periods 2003 - 2010.

23. Plaintiff accepted Defendant's offer in 2002 to issue the same type of property insurance to Plaintiff that Defendant had issued from 1998-2001, which was coverage with a blanket limit of liability, and Plaintiff also accepted Defendant's offer to renew Plaintiff's coverage on the same basis for the policy periods 2003 – 2010.

24. Thus, the parties agreed that Defendant would sell and Plaintiff would purchase property insurance on blanket limit of liability basis for the policy periods 2002 – 2010.

25. In 2009, in breach of its promise to Plaintiff, Defendant did not issue the 2009 Policy with a blanket limit, but rather issued the 2009 Policy with separate limits for each insured location.

-5-

26. The coverage limit for the 71 George Street, East Hartford, Connecticut warehouse under the 2009 Policy was insufficient to fully cover the Plaintiff's loss resulting from the Fire.

27. Had the 2009 Policy provided coverage on a blanket limit basis – as Defendant had promised to sell and as Plaintiff had agreed to purchase – the coverage limit would have been sufficient to cover all of the Plaintiff's loss.

28. Defendant's failure to provide blanket limit coverage under the 2009 Policy as agreed with Plaintiff constitutes a breach of contract.

29. As a result of Defendant's breach, Plaintiff's has suffered damages in the amount of $1,257,974, or such other amount as may be proven at trial.

**SECOND CAUSE OF ACTION, FOR NEGLIGENT MISREPRESENTATION**

30. Plaintiff repeats and realleges the allegations of all the preceding paragraphs as if fully set forth herein.

31. Defendant agreed in 2002 to issue the same type of property insurance to Plaintiff that it had issued from 1998-2001, which was coverage with a blanket limit of liability. Thereafter, Defendant agreed to renew Plaintiff's coverage on the same basis through and including the 2009 Policy period.

32. Without telling Plaintiff that it would not honor its agreement, Defendant issued the 2009 Policy with separate limits for each insured location, which limits were far lower than the single blanket limit would have been had coverage been issued on a blanket limit basis.

33. Defendant knew or should have known that Plaintiff expected to be issued coverage on a blanket limit basis.

34. Defendant knew or should have known that Plaintiff relied upon Defendant's advice and expertise to purchase blanket limit coverage given the ever-changing inventory values at Plaintiff's warehouses.

35. Upon information and belief, Defendant knew that Plaintiff lacked in-house expertise in insurance and was relying upon Defendant's recommendations in that regard.

36. Defendant's failure to properly inform Plaintiff that it would not honor its agreement to provide blanket limit coverage constitutes a material misrepresentation.

37. Plaintiff reasonably relied to its detriment upon Defendant's misrepresentation when it purchased the 2009 Policy. Had Plaintiff known that Defendant would not issue coverage on a blanket limit basis, Plaintiff would have purchased blanket limit coverage from another insurer. At the time, blanket limit coverage was widely available in the insurance marketplace for businesses like the Plaintiff.

38. As a result of Defendant's material misrepresentation, Plaintiff has suffered damages in the amount of $1,257,974, or in such other amount as may be proven at trial.

**THIRD CAUSE OF ACTION, FOR REFORMATION**

39. Plaintiff repeats and realleges the allegations of all the preceding paragraphs as if fully set forth herein.

40. Plaintiff and Defendant intended and agreed in 2002 that Defendant would renew Plaintiff's property insurance with the same material terms and conditions Defendant initially had provided every year from 1998-2001, including coverage on a

blanket limit of liability basis.  Thereafter, Defendant agreed to renew Plaintiff's coverage on the same basis for every subsequent year, including for the 2009 Policy period.

41.     The 2009 Policy, as reduced to writing and issued, failed to conform to Plaintiff's and Defendant's agreement at the time of contracting that the 2009 Policy would contain the same material terms and conditions Defendant initially had provided every year from 1998-2001, including coverage on a blanket limit of liability basis.

42.     After the 2002 renewal, every year from 2003-2009 Plaintiff renewed its property insurance with Defendant with the understanding that it was being provided with the same coverage it had until 2001 and that it requested in 2002. Plaintiff was unaware that the property insurance policies issued to it by Defendant during this period did not provide blanket coverage.  During this period, Defendant never told Plaintiff that its coverage was not being issued on a blanket basis.

43.     Through inadvertent mutual mistake by the Plaintiff and Defendant, the property insurance policies Defendant sold to Plaintiff from 2002 through and including the 2009 Policy, as written, do not reflect the parties' true mutual intent and agreement, in that they purport to provide coverage on a stated value/per location basis as opposed to the blanket limit of liability basis that was agreed to by the parties.

44.     Plaintiff relied on the understanding that the 2002 renewal of its property insurance with Defendant would be materially identical to its 1998-2001 property insurance policies sold to it by Defendant, and in particular that every

subsequent policy, including the 2009 Policy, would continue to provide coverage with a blanket limit of liability.

45. Plaintiff is entitled to an order reforming the 2009 Policy so that application of its limit of liability conforms to the blanket limit of liability coverage provided for in the 1998-2001 property policies sold to it by Defendant. As reformed, the 2009 Policy will express what was understood and agreed to by both parties.

46. Plaintiff is entitled to damages in accordance with the 2009 Policy as reformed.

WHEREFORE, as to all causes of action, Plaintiff seeks damages of $1,257,974, or such other amount as may be proven at trial, along with pre- and post-judgment interest, attorneys' fees, costs, and such other and further relief as this Court may deem just and proper. As to the third cause of action, Plaintiff additionally seeks reformation of the 2009 Policy so that application of its limit of liability conforms to the blanket limit of liability coverage provided for in the 1998-2001 property policies sold to it by Liberty.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all Counts so triable.

By:     /s/ *Dennis J. Artese*
    Finley T. Harckham (CT 26403)
    Dennis J. Artese
    ANDERSON KILL & OLICK, P.C.
    1251 Avenue of the Americas
    New York, NY 10020
    Telephone: 212-278-1000
    Facsimile: 212-278-1733

    *Attorneys for Plaintiff*
    Office Furniture Rental Alliance, LLC

## **CERTIFICATION**

      This is to certify that on the above date, a copy of the foregoing Plaintiff's First Amended Complaint was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                        *s/ Dennis J. Artese*
                                                          Dennis J. Artese