UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| OFFICE FURNITURE RENTAL ALLIANCE, LLC,<br><br>                        Plaintiff,<br><br>vs.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>                        Defendant. | 3:11-cv-01889-JBA<br><br><br><br><br><br>July 22, 2013 |

**PLAINTIFF'S LOCAL RULE 56(A)2 STATEMENT**

Pursuant to Local Civil Rule 56(A)2, plaintiff Office Furniture Rental Alliance, LLC ("OFRA") sets forth herein its response to Liberty Mutual Fire Insurance Company's ("Liberty") Local Rule 56 Statement of Material Facts Not in Dispute, made in connection with Liberty's Motion for Summary Judgment.

I.  **PLAINTIFF'S RESPONSES TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

      1.    From 1998 to 2001, Office Furniture Rental Alliance, LLC ("OFRA") was insured with Liberty Mutual Fire Insurance Company ("Liberty") for property insurance with a blanket limit of coverage. Exhibit A, Second Amended Complaint, at 2-3, ¶¶ 11-13. Exhibit G, Defendant's Answer, at 2-3, ¶¶ 11 and 13.

      **PLAINTIFFS' RESPONSE TO SOF NO. 1:**  Admitted.

      2.    During the 2001 to 2002 policy period from May 1, 2001, to May 1, 2002, OFRA did not renew its property insurance policy with Liberty Mutual, but instead obtained property insurance through Crum and Forster company The North River Insurance Company. Exhibit A, Second Amended Complaint, at 3, ¶ 14. Exhibit G, Defendant's Answer, at 3, ¶ 14.

      **PLAINTIFFS' RESPONSE TO SOF NO. 2:**  Admitted.

3. Liberty Mutual employee, James Lavangie ("Lavangie") asked Robert Orenstein ("Orenstein") for an opportunity to provide a quote for property insurance coverage for OFRA for the 2002 to 2002 policy period. Exhibit B, Ex. 1 (Orenstein Dep.) 47:19-25 to 48:1-4.

**PLAINTIFFS' RESPONSE TO SOF NO. 3:** Denied, except admitted that Liberty employee James Lavangie ("Lavangie") expressed to Robert Orenstein of OFRA that he thought Liberty could be more competitive than it was the prior year and asked Orenstein for another opportunity to sell property insurance to OFRA for the 2002 – 2003 policy period. Ex. 1 (Orenstein Dep.) at 47:19 – 48:4, 50:14-25.

4. No one else at OFRA, other than Orenstein, discussed the specifics of buying the 2002 to 2003 policy with Liberty Mutual. Exhibit B, Ex. 1 (Orenstein Dep.) 49: 8-17.

**PLAINTIFFS' RESPONSE TO SOF NO. 4:** Admitted.

5. When Orenstein discussed the opportunity for Liberty Mutual to provide a quote for property insurance coverage for the 2002 to 2003 policy, Orenstein advised Lavangie "give me comparable coverage to what I just had with Crum and what I had with you before that, and tell me what the premium would be." Exhibit B, Orenstein dep. 48:18-25.

**PLAINTIFFS' RESPONSE TO SOF NO. 5:** Denied. For the 2002 property policy placement, Orenstein told Lavangie that OFRA required the same or comparable coverage that OFRA had with Liberty for the period 1998-2001, <u>and Lavangie understood that Orenstein wanted property insurance on a blanket limit basis</u>. Ex. 1 (Orenstein Dep.) at 48:23 – 49:1, 51:11-23, 52:17-23; Ex. 2 (Lavangie Dep.) at 73:19-74:2; 77:5-16; 78:2-8; 79:17 - 80:10; 95:18-21. Orenstein made clear to Lavangie that if Liberty was going to win back OFRA's business, it would be under the same

2

terms and conditions as the property policies it previously had with Liberty.  Ex. 1 (Orenstein Dep.) at 97:4-24.

6. In response to the request to provide a quote, Lavangie went to underwriting and provided a quote. Exhibit B, Orenstein dep. 49:2-3.

**PLAINTIFFS' RESPONSE TO SOF NO. 6:**  Denied on the basis that Liberty's citation does not support its fact.  The Orenstein testimony cited by Liberty in support of its fact states that Lavangie "went to underwriting and provided me with a <u>premium,</u>" not a "quote" as maintained by Liberty.  (emphasis added).

7. When Orenstein and Lavangie first discussed the 2002 to 2003 property insurance policy, Orenstein asked Lavangie to provide a quote rather than to procure a policy. Exhibit B, Orenstein dep. 52: 10-16.

**PLAINTIFFS' RESPONSE TO SOF NO. 7:**  Denied.  When OFRA's 2001 – 2002 property insurance policy was about to expire, Lavangie expressed to Orenstein that he thought Liberty could be more competitive than it was the prior year and asked Orenstein for another opportunity to sell property insurance to OFRA for the 2002 – 2003 policy period.  Ex. 1 (Orenstein Dep.) at 47:19 – 48:4, 50:14-25.  Orenstein told Lavangie that OFRA required the same or comparable coverage that OFRA had the with Liberty for the period 1998-2001, <u>and Lavangie understood that Orenstein wanted property insurance on a blanket limit basis</u>.  Ex. 1 (Orenstein Dep.) at 48:23 – 49:1, 51:11-23, 52:17-23; Ex. 2 (Lavangie Dep.) at 73:19-74:2; 77:5-16; 78:2-8; 79:17 - 80:10; 95:18-21.  Orenstein made clear to Lavangie that if Liberty was going to win back OFRA's business, it would be under the same terms and conditions as the property policies it previously had with Liberty.  Ex. 1 (Orenstein Dep.) at 97:4-24.

3

8.      When they spoke, Lavangie did not tell Orenstein anything specific about what Liberty would provide to OFRA for 2002-2003 property insurance coverage. Exhibit B, Orenstein dep. 49: 4-7.

**PLAINTIFFS' RESPONSE TO SOF NO. 8:** Admitted.

9.      Orenstein has no recollection of Lavangie or anyone else at Liberty Mutual representing to him that the 2002 to 2003 policy, or any policy issued between 2002 and 2009, inclusive of the policy period covering the 2009 fire, were issued on a blanket limit coverage basis. Exhibit B, Orenstein dep. 74: 14-25; 75: 7-13; 78: 19-25; 79: 1-8.

**PLAINTIFFS' RESPONSE TO SOF NO. 9:** Denied as immaterial inasmuch as Lavangie understood that OFRA required and requested property insurance on a blanket limit basis and failed at all times from 2002 through 2009 to disclose to Orenstein or anyone else at OFRA that the property coverage Liberty sold to OFRA for that period did not apply on a blanket limit basis.  Ex. 1 (Orenstein Dep.) at 47:19 – 48:4, 48:23 – 49:1, 50:14-25, 51:11-23, 52:17-23; 97:4-24; Ex. 2 (Lavangie Dep.) at 73:19-74:2; 77:5-16; 78:2-8; 79:17 - 80:10; 95:18-21; Ex. 3 (Orenstein Decl.) at ¶¶ 4-6.

10.     Orenstein understood that Lavangie would have to consult underwriting in order to provide specific insurance coverage; and, Orenstein has no recollection of Lavangie ever representing he would be able to provide any particular coverage without consulting someone else at Liberty. Exhibit B, Orenstein dep. 73: 23-25; 74: 1-9.

**PLAINTIFFS' RESPONSE TO SOF NO. 10:** Denied on the basis that Liberty's citation does not support its fact.  Further denied as immaterial inasmuch as Lavangie understood that OFRA required and requested property insurance on a blanket limit basis and failed at all times from 2002 through 2009 to disclose to

4

Orenstein or anyone else at OFRA that the property coverage Liberty sold to OFRA for that period did not apply on a blanket limit basis.  Ex. 1 (Orenstein Dep.) at 47:19 – 48:4, 48:23 – 49:1, 50:14-25, 51:11-23, 52:17-23; 97:4-24; Ex. 2 (Lavangie Dep.) at 73:19-74:2; 77:5-16; 78:2-8; 79:17 - 80:10; 95:18-21; Ex. 3 (Orenstein Decl.) at ¶¶ 4-6.

11. The property insurance policies issued by Liberty Mutual to OFRA for the years 2002 to 2009, were issued on a per location limit basis. Exhibit A, Second Amended Complaint, at 4, ¶ 16; Exhibit G, Defendant's Answer, at 3, ¶ 16; Exhibit E, Declarations at page 5 of 5. Exhibit D, Schedule of Coverage, Bates Nos. D14-15 to D1420.

**PLAINTIFFS' RESPONSE TO SOF NO. 11:**  Admitted.

12. OFRA was formed in 1998. Exhibit A, Orenstein dep. 25: 25 to 26:1.

**PLAINTIFFS' RESPONSE TO SOF NO. 12:**  Admitted.

13. Orenstein understood the difference between blanket limit coverage and per location limit coverage at the time of issuance of the first property insurance policy to OFRA in 1998, because Lavangie had explained the difference. Exhibit A, Orenstein dep. 43: 14-22.

**PLAINTIFFS' RESPONSE TO SOF NO. 13:**  Denied as immaterial.  While OFRA admits that Lavangie explained to Orenstein the conceptual difference between blanket and per location limits for the first time during their discussions concerning OFRA's insurance needs when it was formed in 1998, Lavangie did not at any time explain to Orenstein how to identify blanket coverage versus per location coverage in any written quotation/proposal or insurance policy.  Ex. 3 (Orenstein Decl.) at ¶ 7.

14. In response to the discussion with Orenstein, Liberty Mutual

provided a nine page quotation to OFRA, which was e-mailed by Lavangie to Orenstein on March 27, 2002, and forwarded by Orenstein to OFRA President, Ralph Chappano and Controller, Bart Guistina. Exhibit C, e-mail chain and quotation. Bates no. OFR001790 to OFR001800.

**PLAINTIFFS' RESPONSE TO SOF NO. 14:** Denied on the basis that Liberty does not specify with any particularity the "discussion" referenced in its fact, rendering it impossible for OFRA to respond. Admitted that Orenstein sent the email referenced in Liberty's fact.

15. When Liberty Mutual provided the quotation on March 27, 2002, OFRA had not yet decided to purchase property insurance coverage from Liberty Mutual. Exhibit C, e-mail from Bob Orenstein to Ralph Chappano and Bart Guistina, dated March 27, 2002, Bates No. OFR001790.

**PLAINTIFFS' RESPONSE TO SOF NO. 15:** Admitted.

16. The quotation for the 2002 to 2003 property insurance policy states personal property coverage is provided on a per location basis, with specific limits for each OFRA location. Exhibit C, at OFRA00192-OFR001793.

**PLAINTIFFS' RESPONSE TO SOF NO. 16:** Admitted that the subject quotation provides for per location limits. To the extent it is implied in Liberty's fact, denied that Orenstein was aware that the subject quotation provides for per location limits any time before the December 7, 2009 fire (the "Fire") or that Lavangie ever explained any of the terms of the subject quotation to Orenstein except for the premium to be charged. Ex. 1 (Orenstein Dep.) at 53:19-23; Ex. 3 (Orenstein Decl.) at ¶¶ 4-7.

17. The quotation provided to OFRA from Liberty for the 2002 to 2003 policy period states, "LMG Property is willing to provide only the coverage described by this document. This document is a quotation to provide coverage based solely on these specifications. ...Coverage will be determined by the terms and conditions of the policy or policies issued by us. ... You must look to and rely upon the full terms and conditions

of the policy to determine the nature and extent of coverage." Exhibit C, 2002 to 2003 proposal, at Bates No. D-001385.

**PLAINTIFFS' RESPONSE TO SOF NO. 17:** Disputed as immaterial. Not disputed that the above constitutes an accurate partial transcription of the referenced quotation.

18. The 2009 to 2010 policy proposal states: Liberty Mutual Fire Insurance Company is willing to provide only the coverage described by this document. This document is a proposal to provide coverage based solely on these specifications. Liberty Mutual Fire Insurance Company will not be bound or obligated by proposals, specifications, or requests prepared by any other party. Further, this coverage is not bound until expressly accepted, in writing, by a Liberty Mutual Property employee who is authorized to bind these coverages for Liberty Mutual Fire Insurance Company at these values and locations. Finally, this document is not a policy of insurance. Coverage will be determined by the terms and conditions of the policy or policies issued by us. This document was created and distributed to you solely for information purposes only. You must look to and rely upon the full terms and conditions of the policy to determine the nature and extent of coverage." Exhibit F, Proposal, at Bates No. OFR002157.

**PLAINTIFFS' RESPONSE TO SOF NO. 18:** Disputed as immaterial. Not disputed that the above constitutes an accurate partial transcription of the referenced quotation.

19. Subsequent to providing the 2002 to 2003 policy period quote, Lavangie would have called Orenstein or e-mailed him something that showed the premium, and Orenstein would have said fine and agreed to buying coverage. Exhibit A, Orenstein dep. 52: 24-25 to 53: 1-9.

**PLAINTIFFS' RESPONSE TO SOF NO. 19:** Admitted.

20. Orenstein does not recall what portion of the quotation for the 2002 to 2003 policy he reviewed. Exhibit A, Orenstein dep. 57:19-25 to 58: 1-11.

**PLAINTIFFS' RESPONSE TO SOF NO. 20:** Denied to the extent that Liberty's fact suggests that Orenstein did not review the premium as listed on the

7

quotation to make sure it was consistent with what Lavangie had told him it would be by telephone.  Ex. 1 (Orenstein Dep.) at 58:12-19.

21. Each year, from 2002 to 2009, Liberty Mutual provided a written proposal of insurance to OFRA. Orenstein dep. 53:24-25 to 54: 1-7.

**PLAINTIFFS' RESPONSE TO SOF NO. 21:** Admitted.

22. Each year from 2002 to 2009, Liberty Mutual provided a copy of the property insurance policy to OFRA. Orenstein dep. 53:24-25 to 54: 1-7.

**PLAINTIFFS' RESPONSE TO SOF NO. 22:** Admitted.

23. The 2009 to 2010 policy was issued on a per location limit basis. Exhibit A, Second Amended Complaint, at 4, ¶ 16; . Exhibit G, Defendant's Answer, at 3, ¶ 16; Policy, Exhibit E, Declarations at page 5 of 5.

**PLAINTIFFS' RESPONSE TO SOF NO. 23:** Admitted that the subject policy provides for per location limits.  To the extent it is implied in Liberty's fact, denied that Orenstein was aware of that the subject policy provides for per location limits any time before the Fire or that Lavangie ever explained any of the terms of the subject policy to Orenstein except for the premium to be charged.  Ex. 1 (Orenstein Dep.) at 53:19-23; Ex. 3 (Orenstein Decl.) at ¶¶ 4-7.

II. **PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

1. James Lavangie ("Lavangie") of Liberty and Robert Orenstein ("Orenstein") of OFRA first met in approximately 1995, when Orenstein was tasked with procuring insurance for BKM, an affiliate of OFRA.  Ex. 1 (Orenstein Dep.) at 38:24 – 39:15.

8

2.      Lavangie joined Liberty in 1990 as a sales agent/representative. Ex. 2 (Lavangie Dep.) at 20:5-15; 26:24 – 27:10.

3.      From 1998 through at least August 2008, Lavangie was OFRA's primary and direct contact at Liberty for OFRA's insurance purchasing needs.  Ex. 2 (Lavangie Dep.) at 24:11 – 26:13.

4.      Starting in or about September 2008, Lavangie had an account manager who handled OFRA's insurance renewals, but Lavangie continued to be involved in the sale of property insurance to OFRA at that time through the time of the Fire.  Ex. 2 (Lavangie Dep.) at 25:10 – 26:13.

5.      When OFRA was formed in 1998, Lavangie met with Orenstein to discuss OFRA's insurance needs, including its property insurance needs.  Ex. 2 (Lavangie Dep.) at 55:1-14.

6.      During that meeting, it was explained to Lavangie that OFRA's furniture rental product was stored in various locations across the country and that the value of OFRA's personal property constantly fluctuated as inventory was moved from one location to another and in and out of customers' premises.  Ex. 2 (Lavangie Dep.) at 55:23 – 57:14, 59:2 – 60:7.

7.      Based on this knowledge, Lavangie advised Orenstein that OFRA required property insurance on a blanket limit basis, such that the value of *all* of OFRA's inventory combined would be available as a limit of liability for an occurrence at any given location.  Ex. 1 (Orenstein Dep.) at 42:20 – 43:7; Ex. 2 (Lavangie Dep.) at 28:23 – 29:16; 31:9 – 33:2.

8.      Before Orenstein met with Lavangie concerning insurance

nydocs1-1016017.3

coverage for OFRA, Orenstein had no knowledge of blanket limits coverage, and he began to understand blanket limits coverage only after it was explained to him by Lavangie in 1998.  Ex. 1 (Orenstein Dep.) at 43:8-22.

9. Orenstein was not a Risk Manager for OFRA or its affiliate company BKM.  Ex. 2 (Lavangie Dep.) at 51:16-23.

10. As CFO, Orenstein's job responsibilities included audit, tax, legal, banking, cash management, financial reporting, insurance, mergers and acquisitions, real estate, and employee benefits, among others.  Ex. 1 (Orenstein Dep.) at 19:19 – 20:4, 27:7-19.

11. Orenstein spent less than one percent of his time at OFRA on insurance-related matters.  Ex. 1 (Orenstein Dep.) at 28:8-17.

12. Based on Lavangie's advice, OFRA purchased property insurance from Liberty on a blanket limit basis from 1998 – 2001.  Ex. 3 (Orenstein Decl.) at ¶ 3; Ex. 2 (Lavangie Dep.) at 60:18-21, 65:25 – 66:25, 173:2-15, 174:3 – 175:20.

13. For the 2001 – 2002 policy period, Liberty again offered OFRA coverage on a blanket limit basis.  Ex. 2 (Lavangie Dep.) at 75:5-11; 129:12-17.

14. For the 2001 – 2002 policy period, however, OFRA purchased property insurance on a blanket limit basis from another insurance company, Crum & Forster, because Liberty's quote was not competitive and Liberty had been late in presenting its quote.  Ex. 1 (Orenstein Dep.) at 45:4-21, 47:13 – 48:4; Ex. 2 (Lavangie Dep.) at 76:14 – 77:4.

15. When OFRA's 2001 – 2002 property insurance policy with Crum & Forster was about to expire, Liberty sought the opportunity to sell property insurance to

10

OFRA once again, and OFRA agreed.  Ex. 1 (Orenstein Dep.) at 47:19 – 48:4, 50:14-25.

16. For the 2002 – 2003 property policy placement, Orenstein provided Lavangie with a copy of the blanket limit property policy OFRA had purchased from Crum & Forster for the current year, and told Lavangie that OFRA required "the same" or "comparable" coverage to that which it currently had under the expiring Crum & Forster policy and to that which it had with Liberty for the period 1998 through 2001. Ex. 1 (Orenstein Dep.) at 48:18 – 49:1, 51:1-24, 52:4-23.

17. Lavangie understood that, for the 2002 – 2003 policy period, Orenstein was requesting property insurance from Liberty on a blanket limit basis.  Ex. 2 (Lavangie Dep.) at 73:19 – 74:2, 77:5-16; 78:2-8, 79:17 – 80:10, 95:18-21.

18. Orenstein made clear to Lavangie that if Liberty was going to win back OFRA's business, it would be under the same terms and conditions as the property policies it previously had with Liberty.  Ex. 1 (Orenstein Dep.) at 97:4-24.

19. Liberty sent Orenstein a quote for property insurance with limits on a "per location" basis for the 2002 – 2003 period.  Ex. 2 (Lavangie Dep.) at 77:5-16, 88:13 – 89:2.

20. Lavangie claims that he was instructed by Liberty that he was not able at that time to sell property insurance on a blanket limit basis to any policyholders in his market.  Ex. 2 (Lavangie Dep.) at 38:23 – 41:22, 88:13-23, 97:21 – 98:2, 98:16 – 99:4, 136:6 – 137:23.

21. Lavangie initially testified (1) that he could not recall whether he told Orenstein, prior to the inception of the 2002 – 2003 property policy, that he could

not sell OFRA property insurance on a blanket limit basis for that period, and (2) that Orenstein should have known the coverage being offered was not blanket based on the written quotation. Ex. 2 (Lavangie Dep.) at 79:7-21, 88:13-23.

22. Lavangie later changed his testimony, averring that he believed he "would have" discussed with Orenstein at that time that the coverage being offered by Liberty for the 2002 - 2003 policy period would not apply on a blanket basis because that is something he would have gone over with Orenstein in discussing the quote, although he had no specific recollection of such a conversation actually occurring and could not recall anything about the conversation, including whether it was in person or when it took place. Ex. 2 (Lavangie Dep.) at 89:18 – 92:15.

23. Lavangie contradicted himself yet again, first stating that he never explained to Orenstein that the per location coverage Liberty offered for the 2002 – 2003 property policy was different from the blanket coverage Orenstein requested on behalf of OFRA, and then claiming that he did, though he could not recall any specifics. Ex. 2 (Lavangie Dep.) at 95:18 – 96:8.

24. In fact, Lavangie did <u>not</u> inform Orenstein of Lavangie's alleged inability to sell property insurance to OFRA on a blanket limit basis for the 2002 – 2003 policy period. Ex. 1 (Orenstein Dep.) at 52:24 – 53:23, 78:19 – 79:8; Ex. 3 (Orenstein Decl.) at ¶¶ 4-7.

25. The only discussion between Lavangie and Orenstein after Orenstein's receipt of the Liberty quotation for the 2002 – 2003 policy period was with regard to the premium to be charged for the policy. Ex. 1 (Orenstein Dep.) at 52:24 – 53:23.

26. Additionally, Liberty did not issue anything in writing to OFRA explaining that the coverage being offered in the quotation for the 2002 – 2003 policy was on a per location basis and that such coverage differed from the coverage OFRA (1) had requested, (2) currently had with Crum & Forster, and (3) previously had Liberty. Ex. 2 (Lavangie Dep.) at 95:6 – 96:2.

27. OFRA purchased its property insurance policy for the 2002 – 2003 policy period from Liberty. Ex. 2 (Lavangie Dep.) at 173:7-10.

28. Unbeknownst to Orenstein until sometime after the Fire, the 2002 – 2003 property policy that Liberty sold to OFRA was issued on per location limit basis, rather than on a blanket limit basis as requested. Ex. 3 (Orenstein Decl.) at ¶¶ 4-7; Liberty SOF 11.

29. For each year from 2003 through 2009, Orenstein, on behalf of OFRA, requested renewal of OFRA's property insurance policy with Liberty on the same material terms and conditions as contained in the expiring policy, which Orenstein at all relevant times believed to have applied on a blanket limits basis. Ex. 3 (Orenstein Decl.) at ¶ 6.

30. Like with the 2002 – 2003 policy period, the annual property insurance renewal conversations between Lavangie and Orenstein from 2003 – 2009 primarily concerned the premiums to be charged for the coverage and did not discuss the manner in which coverage limits would apply. Ex. 1 (Orenstein Dep.) at 74:21 – 75:6.

31. The property policies Liberty sold to OFRA for the 2003 – 2009 policy period contain per location limits instead of a blanket limit. Liberty SOF 11.

32. At no time from 2002 – 2009 did anyone on behalf of Liberty tell Orenstein that the property insurance it was purchasing from Liberty applied on a per location basis, as opposed to a blanket limit basis. Ex. 3 (Orenstein Decl.) at ¶¶ 4-7.

33. Given OFRA's inability to state with any accuracy the values of its personal property at any given location from one day to the next, due solely to the nature of its furniture rental business, had Liberty told Orenstein at any time between 2002 and the time of the Fire that it could not sell it property insurance on a blanket limit basis, Orenstein would have purchased blanket limit coverage from another insurance company on OFRA's behalf as he did in 2001. Ex. 3 (Orenstein Decl.) at ¶ 8; *see also* Ex. 1 (Orenstein Dep.) at 95:13 – 97:3.

34. Throughout OFRA's entire relationship with Liberty Mutual between 1998 and 2009, Orenstein relied on Lavangie's insurance expertise to ensure that OFRA had the property coverage that a company in its line of business required, namely blanket limits coverage. Ex. 1 (Orenstein Dep.) at 58:12-19, 117:3-14.

35. Lavangie understood that it was his obligation to OFRA and to Orenstein to explain to Orenstein any changes in OFRA's insurance coverage from one year to the next. Ex. 2 (Lavangie Dep.) at 185:4-16.

36. Similarly, Lavangie understood that it was his obligation to OFRA and to Orenstein to explain to Orenstein in 2002 whether the property policy OFRA was purchasing from Liberty contained blanket or per location limits of liability. Ex. 2 (Lavangie Dep.) at 185:4 – 186:15.

37. Lavangie did <u>not</u> expect Orenstein to review the 2002 quotation and identify for himself whether the coverage being offered was blanket or per location. Ex.

nydocs1-1016017.3

2 (Lavangie Dep.) 186:4-10.

38. At trial, OFRA's expert witness, Michael A. Rodman, CPCU, will testify, based on his extensive experience consulting with policyholders on property insurance matters, that policyholders typically do not read anything more than the policy Declarations page to see if the Named Insured, policy dates and premium are correct, and that the language concerning the application of limits is often obscure and would not likely be detected by an untrained policyholder. Ex. 4 (Rodman Decl.) at ¶¶ 1,3 and Ex. A thereto at 3.

39. Mr. Rodman has been engaged as an expert in matters where even licensed insurance agents have failed to detect that a policy sold as blanket insurance provided specified location limits instead. Ex. 4 (Rodman Decl.) at ¶ 4 and Ex. A thereto at 3.

40. Ultimately, Mr. Rodman will testify that, among other things, Liberty and Lavangie failed to satisfy their professional responsibilities to OFRA to provide the blanket coverage that had been requested and expected by OFRA and by failing to inform OFRA specifically that the 2002 – 2003 property policy would provide for per location limits. Ex. 4 (Rodman Decl.) at ¶ 5 and Ex. A thereto at 2.

### III. PLAINTIFF'S STATEMENT OF DISPUTED ISSUES OF MATERIAL FACT

OFRA respectfully submits the following a list of issues of material fact raised by Liberty's motion for summary judgment, as to which OFRA contends there is a genuine issue to be tried:

1. Whether Liberty failed to disclose to OFRA that the property insurance policies it sold to OFRA for the periods 2002 – 2010 did not contain a blanket

limit of insurance that applied to OFRA's personal property.

2. Whether OFRA's reliance on Liberty's omission and concomitant failure to identify the lack of blanket coverage for itself by reviewing the insurance policies was reasonable under the circumstances.

3. If OFRA was negligent in failing to identify the lack of blanket coverage for itself, did such negligence contribute to OFRA's damages claimed in this case, and, if so, what percentage of fault should be assigned to OFRA?

4. Whether a contract was formed each year from 2002 through 2009 for OFRA to purchase and for Liberty to sell personal property insurance on a blanket limit basis, by virtue of Lavangie's failure to disclose that the subject insurance policies contained per location limits in the face of the parties' prior dealings and OFRA's specific requests each year for the same coverage it had with Liberty from 1998 – 2001.

       5.      Whether Lavangie acted fraudulently or inequitably in connection with OFRA's 2002 – 2009 property insurance purchases from Liberty such that OFRA's 2009 – 2010 property insurance policy sold to it by Liberty should be reformed to provide for a blanket limit of liability.

By:    /s/ *Dennis J. Artese*
Finley Harckham
(ct26403)
Dennis J. Artese
(ct28071)
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1000
fharckham@andersonkill.com
dartese@andersonkill.com

*Attorneys for Plaintiff*
*Office Furniture Rental Alliance, LLC*

## CERTIFICATION

This is to certify that on the above date, a copy of the foregoing Plaintiff's Rule 56(A)2 Statement was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

    /s/ *Dennis J. Artese*
    Dennis J. Artese

nydocs1-1016017.3