UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OFFICE FURNITURE RENTAL ALLIANCE, LLC | : | NO.: 3:11-CV-01889 (JBA) |
| v. | : | |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY | : | AUGUST 1, 2013 |

## REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The defendant, Liberty Mutual Fire Insurance Company ("hereinafter Liberty Mutual"), hereby submits this reply brief in support of its motion for summary judgment as to the plaintiff's claims of breach of contract, negligent misrepresentation and reformation.

### Breach of Contract Claim
**(Plaintiff's Br. at pp. 10-18)**

Separating the wheat from the chaff, the gravamen of the plaintiff's breach of contract claim is that Liberty Mutual breached its agreement to provide blanket coverage to OFRA for the May 1, 2009, to May 1, 2010 policy period.[1] As a result of

---

[1] The assertion that the defendant breached an oral agreement to provide blanket limits coverage for the prior policies issued from 2002 to 2008 is a red herring. Each of those policies was a separate contract. *Kane v. American Ins. Co.*, 52 Conn.App. 497, 501, 725 A.2d 1000 (1999). Each expired with no issue as to any claims arising thereunder. Thus, even assuming the defendant breached some agreement as to the terms of those policies, which is denied, the plaintiff was not harmed by any such breach. Nor were the premiums any higher than they would have been if the defendant had issued blanket coverage. Further, oral agreements are subject to the three-year statute of limitations set forth in Conn. Gen. Stat. § 52-581. Therefore, any claim of breach that occurred prior to December 5, 2008, is time-barred.

that alleged breach, OFRA did not receive the coverage it expected to receive when the loss occurred on December 7, 2009. Even if true, the parol evidence rule bars the plaintiff's claim. The policy in effect on that date (Ex. E) unambiguously provides per location coverage limits of $2,780,000 for the personal property stored at 71 George Street, East Hartford, Connecticut. Those limits were paid in full to the plaintiff for the fire loss that occurred on December 7, 2009.

The parol evidence rule precludes any evidence of the plaintiff's intent that the policy provide blanket coverage, because such evidence is being offered to contradict the express terms of the integrated written contract. See *Connecticut Medical Ins. Co. v. Kulikowski*, 286 Conn. 1, 10 n.7, 942 A.2d 334 (2008). ("Because we conclude that the language of this particular policy is clear and unambiguous, and because the defendant wishes to use this evidence to contradict the terms of the insurance policy as informed by our case law that governs questions of named insureds, we must decline to consider parol evidence in interpreting the meaning of the disputed language contained in the declarations"). The rationale of *Kulikowski* applies in this case. The policy unequivocally states that coverage is on a per location basis. The plaintiff seeks to introduce evidence of a prior agreement to contradict the express terms of the policy. Indeed, this case represents a classic example of why the parol evidence rule exists. If an insured could enter into an insurance agreement that provided specified limits of coverage at a specified premium, but later argue that after a loss occurred, he actually intended the policy to provide higher limits, the contract would be rendered a nullity. *Schilberg Integrated Metals Corp. v. Continental Casualty Co.*, 263 Conn. 245, 278, 819 A.2d 773 (2003). ("As we have so often noted, the parol evidence rule is not a rule

of evidence, but a substantive rule of contract law. . . . The rule is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages . . . in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme.").

In addition, the plaintiff's breach of contract claim is nothing more than a thinly veiled claim of professional negligence on the part of Mr. Lavangie. As Judge Hall observed in *O & G Industries, Inc. v. Aon Risk Services Northeast, Inc.*, 2013 WL 424774 (D.Conn. 2013):

> When the allegations are couched in terms of the defendant having committed professional negligence in the procuring of the insurance policy issued to the plaintiffs instead of alleging that the defendant promised the plaintiff a specific result in obtaining the insurance, the claim for breach of contract should be dismissed. (Citations omitted).

There is no genuine issue of material fact as to the plaintiff's breach of contract claim, and the defendant is entitled to judgment in its favor as a matter of law on Count One of the Second Amended Complaint.

### **Negligent Misrepresentation Claim**
**(Plaintiff's Br. at pp. 2-10)**

The plaintiff's negligence claim is premised on the alleged failure of Mr. Lavangie to disclose that the 2002-2003 policy was not issued on a blanket limits basis. (Plaintiff's br. at pp. 4-7). The defendant vehemently denies any negligent misrepresentation with regard to the terms of the 2002-2003 policy. Mr. Lavangie

3

testified that although he could not recall the specific conversation, he would have informed Mr. Orenstein that the policy could not be issued on a blanket limits basis. However, even if he did not so state, the proposal that Lavangie sent to Orenstein on March 27, 2002, did. The proposal clearly indicates that coverage would be provided on a per location basis. Orenstein knew the difference between blanket and per location coverage because he and Mr. Lavangie had specifically discussed it in 1998. Further, the declarations for the 2002 policy themselves indicate that the limits are per location. Thus, in 2002, there was no failure to disclose the policy limits such as would give rise to a claim of negligent misrepresentation. However, even if there was, the statute of limitations applicable to any such claim expired, at the latest, in 2005. See Conn. Gen. Stat. § 52-584. The plaintiff filed this lawsuit on December 5, 2011.

In an attempt to avoid the bar of the statute of limitations, the plaintiff has contrived an argument that each subsequent policy renewal was a continuation of the original negligent misrepresentation. This argument fails, however, for the reason that each subsequent renewal was a separate contract. Unless the plaintiff can show a separate negligent misrepresentation as to the 2009-2010 policy, its claim fails. Each written proposal from 2003 to 2009 clearly indicated that coverage would be written on a per location basis. Mr. Orenstein was responsible for obtaining and reviewing insurance coverage for OFRA. He made the determination each year as to the coverage limits for each of OFRA's locations and submitted that information to Mr. Lavangie. He accepted each proposal in writing. Despite his assertions to the contrary, he functioned as OFRA's risk manager for many years before the 2009-2010 policy was issued. He was sophisticated in insurance matters. Thus, in 2009 (as well

4

as in 2002), there was no failure to disclose the policy limits such as would give rise to a claim of negligent misrepresentation.

Moreover, even if Mr. Lavangie's alleged silence in 2002 could be construed as a misrepresentation that somehow replicated itself each year thereafter, any claimed detrimental reliance on the part of Mr. Orenstein is oxymoronic. The plaintiff claims that Orenstein not only failed to read the 2002 proposal and policy declarations, but for the ensuing seven years thereafter, continued to do the same. Yet each year, he selected the amount of coverage assigned to each location listed on the policy. Of necessity, therefore, he had to have been aware of the annual policy declarations. Since the declarations make it clear that the coverage is provided on a per location basis, and since Orenstein had to be aware of the declarations because he chose the limits, he cannot, as a matter of law, have reasonably relied on the defendant's alleged misrepresentation.

Accordingly, the defendant is entitled to judgment in its favor on Count Two of the Second Amended Complaint.

### Reformation Claim
### (Plaintiff's Br. at pp. 18-20)

The plaintiff's Second Amended Complaint alleges simply that there was an "inadvertent mutual mistake" that entitles it to reformation of the 2009-2010 policy. (Second Amended Complaint ¶ 43). In its opposition to the motion for summary judgment, the plaintiff has not addressed mutual mistake. Rather, the plaintiff advances the theory that the defendant fraudulently and inequitably concealed the nature of the coverage provided. Besides the fact that this theory is being raised for the first time in the plaintiff's opposition to a motion for summary judgment, Fed. R. Civ. P. Rule 9(b)

5

requires that a party claiming fraud or mistake must "state with particularity the circumstances constituting fraud or mistake." The Second Amended Complaint contains no reference whatsoever to fraud, much less the particular circumstances constituting fraud. Rather, it simply alleges inadvertent mutual mistake. Since the plaintiff has not addressed that claim in its brief, and since there clearly was no *mutual* mistake in this case, judgment should enter for the defendant on Count Three.

However, even if the court is willing to consider the issue of fraud, that claim fails as well:

> [R]eformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other. . . . Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties. . . . The evolution of the equitable doctrine of reformation providing, as it does, relief where none was provided at law against an instrument secured by fraud and mistake has properly been said to require evidence of a very high order to overcome what the New York Court of Appeals calls the heavy presumption that a deliberately prepared and executed written instrument manifested the true intention of the parties. . . . *We have stated the standard of proof for reformation in different ways but all with the same substantive thrust: evidence should be clear, substantial and convincing* (Emphasis added; citations and internal quotation marks omitted).

*Lopinto v. Haines,* 185 Conn. 527, 531–34, 441 A.2d 151 (1981); see *Traggis v. Shawmut Bank Connecticut, N.A.*, 72 Conn.App. 251, 259, 805 A.2d 105 (2002).

The plaintiff argues that "'[f]raud, for the purposes of [reformation], includes . . . concealment or nondisclosure by a party who knows that the other party is acting under a mistake as to material facts.'" (Plaintiff's br. at p. 19, *quoting Home Owners' Loan Corp. v. Stevens*, 120 Conn. 5, 179 A. 330, 332, (1935)). However, Connecticut courts

6

have repeatedly cautioned that fraud is not to be presumed and must be strictly proven by clear, convincing, and unequivocal evidence. *DeLuca v. C. W. Blakeslee & Sons, Inc.*, 174 Conn. 535, 546, 391 A.2d 170, 176 (1978). "A showing of fraud . . . requires more than just a false statement. There must also be an intent to defraud. . . . To justify reformation based upon a unilateral mistake coupled with fraud, there must have been reliance on the part of the party seeking reformation—in other words, *that party must have been actually misled.*" (Emphasis added). *HSB Group, Inc. v. SVB Underwriting, Ltd.*, 664 F.Supp.2d 158, 178 (D.Conn. 2009). There is no such evidence in this case.

Moreover, reformation based on unilateral mistake coupled with inequitable conduct must also be proven by clear and convincing evidence. See *Traggis v. Shawmut Bank Connecticut, N.A.*, *supra*. Here, there is neither an allegation nor a scintilla of evidence of inequitable conduct on the part of the defendant. To the contrary, if the plaintiff is to be believed, it waited over seven years (and only after a loss occurred), to review its policy.[2] If so, the inequitable conduct in this action rests on the plaintiff's side of the ledger. "In order to obtain equitable relief, one must act equitably."

---

[2] The defendant takes issue with the plaintiff's assertion, and that of its expert, that insureds have no obligation to read their policies. First, Connecticut law suggests otherwise. *Ursini v. Goldman*, 118 Conn. 554, 173 A. 789, 792-93 (1934). ("The general rule is that where a person of mature years, and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it, and notice of its contents will be imputed to him if he negligently fails to do so; but this rule is subject to qualifications, including intervention of fraud or artifice, or mistake not due to negligence, and applies only if nothing has been said or done to mislead the person sought to be charged or to put a man of reasonable business prudence off his guard in the matter."). Second, as the corporate officer in charge of procuring insurance on behalf of OFRA, Orenstein requested and received a written proposal setting forth the applicable coverages each year, and presented them to his superiors. It is, therefore, disingenuous to suggest that Orenstein's purported failure to read the proposals and the policies permits the court to reform the contract.

7

*Prudential Property & Casualty Ins. Co. v. Anderson*, 101 Conn.App. 438, 445, 922 A.2d 236 (2007).

Lastly, the defendant takes issue with the plaintiff's suggestion that it has a right to a jury trial on the claim of reformation of the policy. (See Plaintiff's br. at p. 20). "The Seventh Amendment preserves the right to a jury trial in suits at common law, that is, actions at law, and the right does not attach to suits in equity dealing with equitable matters. *Ross v. Bernhard,* 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970)." *Giant Eagle, Inc. v. Fed. Ins. Co.*, 884 F. Supp. 979, 984 (W.D.Pa. 1995).

For the foregoing reasons, as well as for the reasons set forth in the defendant's memorandum of law dated June, 21, 2013, it is respectfully requested that the motion for summary judgment be granted.

DEFENDANT,
LIBERTY MUTUAL FIRE INSURANCE COMPANY


By___/s/ Philip T. Newbury, Jr._____
   Philip T. Newbury, Jr.
   ct05283
   Howd & Ludorf, LLC
   65 Wethersfield Avenue
   Hartford, CT  06114
   (860) 249-1361
   (860) 249-7665 (Fax)
   E-Mail:  pnewbury@hl-law.com

**CERTIFICATION**

      This is to certify that on **August 1, 2013**, a copy of the foregoing **Reply Brief in Support of Motion for Summary Judgment** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dennis J. Artese
Anderson Kill & Olick P.C.
1251 Avenue of The Americas
New York, NY 10020
212-278-1000
212-278-1733 (fax)
dartese@andersonkill.com

Finley T. Harckham, Esq.
Anderson, Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
212-278-1000
212-278-1733 (fax)
fharckham@andersonkill.com

                                            /s/ Philip T. Newbury, Jr.
                                            Philip T. Newbury, Jr.