UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OFFICE FURNITURE RENTAL ALLIANCE, LLC | : : : | NO.: 3:11-CV-01889 (JBA) |
| v. | : : | |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY | : : | AUGUST 1, 2013 |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S "STATEMENT OF ADDITIONAL MATERIAL FACTS"

In its Rule 56(a)2 statement, the plaintiff responds to the defendant's Rule 56(a)1 statement of facts as to which it contends there is no genuine issue of material fact (pp. 1-8), and lists four issues that it contends are genuine issues of fact that require a trial (pp. 15-16). In addition, the plaintiff has set forth forty "additional material facts" (pp. 8-15). The Rule 56 does not allow the non-moving party to submit a counter-statement of additional material facts. Further, there is no cross-motion for summary judgment in this case. Finally, the facts stated in the plaintiff's counter-statement are irrelevant and/or immaterial to the issues in this case, are argumentative, or are based on inadmissible evidence in violation of Fed. R. Civ. P. Rule 56(c)(2). Accordingly, the defendant objects to these additional facts in their entirety, and submits that they should not be considered by the court in deciding the

defendant's motion for summary judgment. In the event, however, that the court considers the plaintiff's counter-statement of facts, the defendant responds as follows:

1. James Lavangie ("Lavangie") of Liberty and Robert Orenstein ("Orenstein") of OFRA first met in approximately 1995, when Orenstein was tasked with procuring insurance for BKM, an affiliate of OFRA. Ex. 1 (Orenstein Dep.) at 38:24 – 39:15.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 1: Admitted.**

2. Lavangie joined Liberty in 1990 as a sales agent/representative. Ex. 2 (Lavangie Dep.) at 20:5-15; 26:24 – 27:10.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 2: Admitted.**

3. From 1998 through at least August 2008, Lavangie was OFRA's primary and direct contact at Liberty for OFRA's insurance purchasing needs. Ex. 2 (Lavangie Dep.) at 24:11 – 26:13.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 3: Admitted.**

4. Starting in or about September 2008, Lavangie had an account manager who handled OFRA's insurance renewals, but Lavangie continued to be involved in the sale of property insurance to OFRA at that time through the time of the Fire. Ex. 2 (Lavangie Dep.) at 25:10 – 26:13.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 4: Admitted.**

5. When OFRA was formed in 1998, Lavangie met with Orenstein to discuss OFRA's insurance needs, including its property insurance needs. Ex. 2 (Lavangie Dep.) at 55:1-14.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 5:  Admitted.**

6. During that meeting, it was explained to Lavangie that OFRA's furniture rental product was stored in various locations across the country and that the value of OFRA's personal property constantly fluctuated as inventory was moved from one location to another and in and out of customers' premises. Ex. 2 (Lavangie Dep.) at 55:23 – 57:14, 59:2 – 60:7.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 6:  Admitted.**

7. Based on this knowledge, Lavangie advised Orenstein that OFRA required property insurance on a blanket limit basis, such that the value of all of OFRA's inventory combined would be available as a limit of liability for an occurrence at any given location. Ex. 1 (Orenstein Dep.) at 42:20 – 43:7; Ex. 2 (Lavangie Dep.) at 28:23 – 29:16; 31:9 – 33:2.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 7:  Denied.  Mr. Lavangie never stated that blanket insurance was "required".  (Lavangie Dep., Ex. 2, p. 30). However, even if true, it is immaterial to the issues in this case.**

8. Before Orenstein met with Lavangie concerning insurance coverage for OFRA, Orenstein had no knowledge of blanket limits coverage, and he began to

understand blanket limits coverage only after it was explained to him by Lavangie in 1998. Ex. 1 (Orenstein Dep.) at 43:8-22.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 8: The defendant admits that Mr. Lavangie and Mr. Orenstein discussed blanket limits coverage in 1998, and that Mr. Orenstein understood the difference between blanket limits coverage and per location coverage at that time. (Orenstein Dep. Ex. 1, pp. 43).**

9. Orenstein was not a Risk Manager for OFRA or its affiliate company BKM. Ex. 2 (Lavangie Dep.) at 51:16-23.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 9: The defendant admits that Mr. Orenstein did not hold the title of Risk Manager at OFRA or BKM. However, he performed the duties of risk manager with regard to insurance. (Orenstein Dep., Ex. 1, pp. 19, 22, 28-29; Lavangie Dep., Ex. 2, pp. 52-53)**

10. As CFO, Orenstein's job responsibilities included audit, tax, legal, banking, cash management, financial reporting, insurance, mergers and acquisitions, real estate, and employee benefits, among others. Ex. 1 (Orenstein Dep.) at 19:19 – 20:4, 27:7-19.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 10: Admitted.**

11. Orenstein spent less than one percent of his time at OFRA on insurance-related matters. Ex. 1 (Orenstein Dep.) at 28:8-17.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 11: The defendant admits that Mr. Orenstein testified he spent less than one percent of his time at OFRA on insurance matters, but even if true, it is immaterial to the issues in this case.**

12. Based on Lavangie's advice, OFRA purchased property insurance from Liberty on a blanket limit basis from 1998 – 2001. Ex. 3 (Orenstein Decl.) at ¶ 3; Ex. 2 (Lavangie Dep.) at 60:18-21, 65:25 – 66:25, 173:2-15, 174:3 – 175:20.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 12: The defendant admits that OFRA purchased blanket limits from 1998-2001, but denies that it was on the advice of Mr. Lavangie. (Lavangie Dep. pp. 30). However, even if it was, it is immaterial to the issues in this case.**

13. For the 2001 – 2002 policy period, Liberty again offered OFRA coverage on a blanket limit basis. Ex. 2 (Lavangie Dep.) at 75:5-11; 129:12-17.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 13: Admitted.**

14. For the 2001 – 2002 policy period, however, OFRA purchased property insurance on a blanket limit basis from another insurance company, Crum & Forster, because Liberty's quote was not competitive and Liberty had been late in presenting its quote. Ex. 1 (Orenstein Dep.) at 45:4-21, 47:13 – 48:4; Ex. 2 (Lavangie Dep.) at 76:14 – 77:4.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 14: The defendant admits that OFRA was insured by Crum & Forster in 2001-2002. The defendant denies that it**

**was because Liberty's quote was not competitive and was submitted late. However, even if it was that is immaterial to the issues in this case.**

15. When OFRA's 2001 – 2002 property insurance policy with Crum & Forster was about to expire, Liberty sought the opportunity to sell property insurance to OFRA once again, and OFRA agreed. Ex. 1 (Orenstein Dep.) at 47:19 – 48:4, 50:14-25.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 15: Admitted.**

16. For the 2002 – 2003 property policy placement, Orenstein provided Lavangie with a copy of the blanket limit property policy OFRA had purchased from Crum & Forster for the current year, and told Lavangie that OFRA required "the same" or "comparable" coverage to that which it currently had under the expiring Crum & Forster policy and to that which it had with Liberty for the period 1998 through 2001. Ex. 1 (Orenstein Dep.) at 48:18 – 49:1, 51:1-24, 52:4-23.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 16: The defendant admits that in 2002, Mr. Orenstein requested similar or comparable coverage to its prior policies with Crum & Forster and Liberty Mutual. However, even if so, it is immaterial to the issues in this case.**

17. Lavangie understood that, for the 2002 – 2003 policy period, Orenstein was requesting property insurance from Liberty on a blanket limit basis. Ex. 2 (Lavangie Dep.) at 73:19 – 74:2, 77:5-16; 78:2-8, 79:17 – 80:10, 95:18-21.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 17: The defendant admits that in 2002, Mr. Orenstein requested similar or comparable coverage to its prior policies with Crum & Forster and Liberty Mutual, which provided blanket limits coverage. However, even if so, it is immaterial to the issues in this case.**

18. Orenstein made clear to Lavangie that if Liberty was going to win back OFRA's business, it would be under the same terms and conditions as the property policies it previously had with Liberty. Ex. 1 (Orenstein Dep.) at 97:4-24.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 18: The defendant admits that in 2002, Mr. Orenstein requested similar or comparable coverage to its prior policies with Crum & Forster and Liberty Mutual, which provided blanket limits coverage. However, even if so, it is immaterial to the issues in this case.**

19. Liberty sent Orenstein a quote for property insurance with limits on a "per location" basis for the 2002 – 2003 period. Ex. 2 (Lavangie Dep.) at 77:5-16, 88:13 – 89:2.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 19: Admitted.**

20. Lavangie claims that he was instructed by Liberty that he was not able at that time to sell property insurance on a blanket limit basis to any policyholders in his market. Ex. 2 (Lavangie Dep.) at 38:23 – 41:22, 88:13-23, 97:21 – 98:2, 98:16 – 99:4, 136:6 – 137:23.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 20:** **The defendant responds that Mr. Lavangie is not making "claims" in this case. The defendant admits that Liberty Mutual was not willing to write blanket limits coverage for OFRA.**

21. Lavangie initially testified (1) that he could not recall whether he told Orenstein, prior to the inception of the 2002 – 2003 property policy, that he could not sell OFRA property insurance on a blanket limit basis for that period, and (2) that Orenstein should have known the coverage being offered was not blanket based on the written quotation. Ex. 2 (Lavangie Dep.) at 79:7-21, 88:13-23.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 21:  Admitted.**

22. Lavangie later changed his testimony, averring that he believed he "would have" discussed with Orenstein at that time that the coverage being offered by Liberty for the 2002 - 2003 policy period would not apply on a blanket basis because that is something he would have gone over with Orenstein in discussing the quote, although he had no specific recollection of such a conversation actually occurring and could not recall anything about the conversation, including whether it was in person or when it took place. Ex. 2 (Lavangie Dep.) at 89:18 – 92:15.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 22:  The defendant denies that Mr. Lavangie changed his testimony, and that this purported statement of fact is nothing more than counsel's mischaracterization of Mr. Lavangie's testimony. Therefore, it is inadmissible.**

23. Lavangie contradicted himself yet again, first stating that he never explained to Orenstein that the per location coverage Liberty offered for the 2002 – 2003 property policy was different from the blanket coverage Orenstein requested on behalf of OFRA, and then claiming that he did, though he could not recall any specifics. Ex. 2 (Lavangie Dep.) at 95:18 – 96:8.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 23: The defendant denies that Mr. Lavangie contradicted himself, and that this purported statement of fact is nothing more than counsel's mischaracterization of Mr. Lavangie's testimony. Therefore, it is inadmissible.**

24. In fact, Lavangie did not inform Orenstein of Lavangie's alleged inability to sell property insurance to OFRA on a blanket limit basis for the 2002 – 2003 policy period. Ex. 1 (Orenstein Dep.) at 52:24 – 53:23, 78:19 – 79:8; Ex. 3 (Orenstein Decl.) at ¶¶ 4-7.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 24: Denied. However, even if true, it is immaterial to the issues in this case.**

25. The only discussion between Lavangie and Orenstein after Orenstein's receipt of the Liberty quotation for the 2002 – 2003 policy period was with regard to the premium to be charged for the policy. Ex. 1 (Orenstein Dep.) at 52:24 – 53:23.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 25: Denied. However, even if true, it is immaterial to the issues in this case.**

26. Additionally, Liberty did not issue anything in writing to OFRA explaining that the coverage being offered in the quotation for the 2002 – 2003 policy was on a per location basis and that such coverage differed from the coverage OFRA (1) had requested, (2) currently had with Crum & Forster, and (3) previously had Liberty. Ex. 2 (Lavangie Dep.) at 95:6 – 96:2.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 26: Denied. The proposals and the policies indicate that they were written on a per location basis.**

27. OFRA purchased its property insurance policy for the 2002 – 2003 policy period from Liberty. Ex. 2 (Lavangie Dep.) at 173:7-10.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 27: Admitted.**

28. Unbeknownst to Orenstein until sometime after the Fire, the 2002 – 2003 property policy that Liberty sold to OFRA was issued on per location limit basis, rather than on a blanket limit basis as requested. Ex. 3 (Orenstein Decl.) at ¶¶ 4-7; Liberty SOF 11.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 28: Denied. However, even if true, it is immaterial to the issues in the case as the policy speaks for itself as to the nature of the coverage.**

29. For each year from 2003 through 2009, Orenstein, on behalf of OFRA, requested renewal of OFRA's property insurance policy with Liberty on the same material terms and conditions as contained in the expiring policy, which Orenstein at

all relevant times believed to have applied on a blanket limits basis. Ex. 3 (Orenstein Decl.) at ¶ 6.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 29: The defendant admits that OFRA renewed coverage from 2003-2009 on the same terms and conditions. The defendant denies that Mr. Orenstein believed the policies provided blanket limits coverage. However, even if true, it is immaterial to the issues in this case.**

30. Like with the 2002 – 2003 policy period, the annual property insurance renewal conversations between Lavangie and Orenstein from 2003 – 2009 primarily concerned the premiums to be charged for the coverage and did not discuss the manner in which coverage limits would apply. Ex. 1 (Orenstein Dep.) at 74:21 – 75:6.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 30: Admitted. However, even if true, it is immaterial to the issues in this case. The policy speaks for itself as to "the manner in which coverage limits would apply."**

31. The property policies Liberty sold to OFRA for the 2003 – 2009 policy period contain per location limits instead of a blanket limit. Liberty SOF 11.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 31: Admitted.**

32. At no time from 2002 – 2009 did anyone on behalf of Liberty tell Orenstein that the property insurance it was purchasing from Liberty applied on a per location basis, as opposed to a blanket limit basis. Ex. 3 (Orenstein Decl.) at ¶¶ 4-7.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 32: Denied. The proposals and policies issued by Liberty Mutual to Mr. Orenstein indicate that they provide per location coverage limits.**

33. Given OFRA's inability to state with any accuracy the values of its personal property at any given location from one day to the next, due solely to the nature of its furniture rental business, had Liberty told Orenstein at any time between 2002 and the time of the Fire that it could not sell it property insurance on a blanket limit basis, Orenstein would have purchased blanket limit coverage from another insurance company on OFRA's behalf as he did in 2001. Ex. 3 (Orenstein Decl.) at ¶ 8; *see also* Ex. 1 (Orenstein Dep.) at 95:13 – 97:3.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 33: Denied. However, even if true, it is immaterial to the issues in this case.**

34. Throughout OFRA's entire relationship with Liberty Mutual between 1998 and 2009, Orenstein relied on Lavangie's insurance expertise to ensure that OFRA had the property coverage that a company in its line of business required, namely blanket limits coverage. Ex. 1 (Orenstein Dep.) at 58:12-19, 117:3-14.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 34: Denied. However, even if true, it is immaterial to the issues in this case.**

35. Lavangie understood that it was his obligation to OFRA and to Orenstein to explain to Orenstein any changes in OFRA's insurance coverage from one year to the next. Ex. 2 (Lavangie Dep.) at 185:4-16.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 35: Admitted. However, there were no changes with respect to the type of coverage provided (i.e., per location) from 2002 to 2009.**

36. Similarly, Lavangie understood that it was his obligation to OFRA and to Orenstein to explain to Orenstein in 2002 whether the property policy OFRA was purchasing from Liberty contained blanket or per location limits of liability. Ex. 2 (Lavangie Dep.) at 185:4 – 186:15.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 36: Admitted. However, it is immaterial to the issues in this case.**

37. Lavangie did not expect Orenstein to review the 2002 quotation and identify for himself whether the coverage being offered was blanket or per location. Ex. 2 (Lavangie Dep.) 186:4-10.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 37: Admitted. Mr. Lavangie further testified that he expected Mr. Orenstein to go through the policy and come back with any questions he may have. (Lavangie Dep., Ex. 2, p. 186).**

38. At trial, OFRA's expert witness, Michael A. Rodman, CPCU, will testify, based on his extensive experience consulting with policyholders on property insurance

matters, that policyholders typically do not read anything more than the policy Declarations page to see if the Named Insured, policy dates and premium are correct, and that the language concerning the application of limits is often obscure and would not likely be detected by an untrained policyholder. Ex. 4 (Rodman Decl.) at ¶¶ 1,3 and Ex. A thereto at 3.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 38: The defendant does not respond to this purported statement of fact as it is nothing more than counsel's characterization of his expert's testimony. Further, the scope of the expert's trial testimony, if any, is up to the court to decide. To the extent that is expert is offering opinions that are not permitted under the Federal Rules of Evidence or Connecticut substantive law, they are inadmissible.**

39. Mr. Rodman has been engaged as an expert in matters where even licensed insurance agents have failed to detect that a policy sold as blanket insurance provided specified location limits instead. Ex. 4 (Rodman Decl.) at ¶ 4 and Ex. A thereto at 3.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 39: The defendant does not respond to this purported statement of fact as it is nothing more than counsel's characterization of his expert's testimony. Further, the scope of the expert's trial testimony, if any, is up to the court to decide. To the extent that is expert is**

**offering opinions that are not permitted under the Federal Rules of Evidence or Connecticut substantive law, they are inadmissible.**

40. Ultimately, Mr. Rodman will testify that, among other things, Liberty and Lavangie failed to satisfy their professional responsibilities to OFRA to provide the blanket coverage that had been requested and expected by OFRA and by failing to inform OFRA specifically that the 2002 – 2003 property policy would provide for per location limits. Ex. 4 (Rodman Decl.) at ¶ 5 and Ex. A thereto at 2.

**DEFENDANT'S RESPONSE TO ADDITIONAL SOF 40: The defendant does not respond to this purported statement of fact as it is nothing more than counsel's characterization of his expert's testimony. Further, the scope of the expert's trial testimony, if any, is up to the court to decide. To the extent that is expert is offering opinions that are not permitted under the Federal Rules of Evidence or Connecticut substantive law, they are inadmissible.**

DEFENDANT,
LIBERTY MUTUAL FIRE INSURANCE COMPANY


By   /s/ Philip T. Newbury, Jr.
   Philip T. Newbury, Jr.
   ct05283
   Howd & Ludorf, LLC
   65 Wethersfield Avenue
   Hartford, CT  06114
   (860) 249-1361
   (860) 249-7665 (Fax)
   E-Mail: pnewbury@hl-law.com

## **CERTIFICATION**

      This is to certify that on **August 1, 2013**, a copy of the foregoing **Response to Plaintiff's "Statement of Additional Material Facts"** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


Dennis J. Artese
Anderson Kill & Olick P.C.
1251 Avenue of The Americas
New York, NY 10020
212-278-1000
212-278-1733 (fax)
dartese@andersonkill.com

Finley T. Harckham, Esq.
Anderson, Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
212-278-1000
212-278-1733 (fax)
fharckham@andersonkill.com

                                                /s/ Philip T. Newbury, Jr.
                                                Philip T. Newbury, Jr.