UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| OFFICE FURNITURE RENTAL ALLIANCE, LLC, <br>     *Plaintiff*, <br>      *v.* <br> LIBERTY MUTUAL FIRE INSURANCE COMPANY, <br>     *Defendant*. | Civil No. 3:11cv1889 (JBA) <br><br><br> October 31, 2013 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Office Furniture Rental Alliance, LLC ("OFRA") brought this suit against Defendant Liberty Mutual Insurance Company ("Liberty Mutual") stating claims for breach of contract (Count One), negligent misrepresentation (Count Two), and reformation (Count Three), arising out the failure of Defendant's property insurance policy to provide blanket coverage as Plaintiff had requested. (*See* Am. Compl. [Doc. # 44].) Defendant now moves [Doc. # 61] for summary judgment, arguing that Plaintiff has failed to establish sufficient facts to support its claims. For the following reasons, Defendant's motion for summary judgment is granted in part and denied in part.

**I.      Background**

OFRA was founded in 1998. (*See* Orenstein Dep. Tr., Ex. B to Def.'s Loc. R. 56(a)1 Stmt. [Doc. # 61-2] at 25–26.) It sells and rents office furniture, and leases a number of warehouses throughout the country in which it stores its inventory of furniture. (*See* Am. Compl. ¶¶ 6–7; *see also* Orenstein Dep. Tr. at 42.) Starting in 1998, Plaintiff began purchasing insurance policies from Defendant, through its agent James Lavangie. (*See* Lavangie Dep. Tr., Ex. 2 to Pl.'s Loc. R. 56(a)2 Stmt. [Doc. # 63] at 55; Orenstein Dep. Tr. at 38–39.) When OFRA was first formed, Robert Orenstein, a member of OFRA, met with Lavangie to discuss the purchase of property insurance for

OFRA.  (*See* Orenstein Dep. Tr. at 13, 42–43; Lavangie Dep. Tr. at 55.)  Lavangie explained the difference between blanket insurance coverage and per location coverage to Orenstein, and recommended that Plaintiff purchase blanket insurance coverage, which would cover the totality of its inventory, regardless of fluctuations in inventory in specific warehouse locations.  (*See* Orenstein Dep. Tr. at 42–43; Orenstein Aff., Ex. 3 to Pl.'s 56(a)2 Stmt. ¶¶ 3, 7.)[1]  Based on this recommendation, Plaintiff purchased a blanket property insurance policy from Defendant each year from 1998 to 2001.  (*See* Am. Compl. ¶¶ 11–12; Orenstein Aff. ¶ 3.)

During the 2001 to 2002 policy period, Plaintiff chose not to renew its insurance with Defendant, and instead purchased a blanket property insurance policy from a different company.  (*See* Am. Compl. ¶ 14; *see also* Orenstein Dep. Tr. at 45–47.)  However, in 2002, Lavangie asked Orenstein for an opportunity to provide a quote for the 2002 to 2003 policy year.  (*See* Orenstein Dep. at 47–48.)  Orenstein asked Lavangie to give him "comparable coverage" to what Plaintiff had purchased from 1998 to 2001, and to what Plaintiff had under its current policy.  (*See id.* at 48–49.)  They discussed that if Defendant wanted to win back Plaintiff's business, it would have to be under the same terms and conditions as the policies Defendant had previously provided.  (*See id.* at 97.)  No one else at OFRA besides Orenstein discussed the specifics of purchasing the 2002 to 2003 policy with Lavangie.  (*See id.* at 49.)  Lavangie understood that Orenstein was requesting a quote for blanket coverage for the 2002 to 2003 policy period.  (*See* Lavangie Dep. Tr. at 80.)

---

[1] Lavangie does not recall what type of property insurance he recommended during the 1998 meeting.  (*See* Lavangie Dep. Tr. at 57, 60.)

On March 27, 2002, Lavangie emailed an insurance quote to Orenstein.  (*See* Mar. 27, 2002 Email, Ex. C to Def.'s 56(a)1 Stmt. at OFR001790.)  The quote was for property insurance coverage on a per location limit, rather than a blanket limit basis.  (*See id.* at OFR001792–OFR001793.)  Orenstein does not recall whether he read the quote, but his normal practice would have been to review at least the portion of the quote setting out the premium, rather than to read the quote from "beginning to end."  (*See* Orenstein Dep. Tr. at 58–59.)  Although Lavangie does not recall any specific conversation with Orenstein regarding the quote, he believes that he would have explained to Orenstein that the quote was on a per location limit, rather than on a blanket limit basis because it was his normal practice not to leave it to Orenstein to identify changes in the policy for himself.  (*See* Lavangie Dep. Tr. at 89–92, 185–86.)  Orenstein avers that Lavangie never informed him that Defendant was not able to sell OFRA property insurance on a blanket limit basis, or explained to him how to identify the difference between the two coverages in the terms of a quote or policy, and states that he was not aware that he was buying property insurance only on a per location limit basis in 2002.  (*See* Orenstein Aff. ¶¶ 4–5, 7.)  Plaintiff purchased property insurance from Defendant on a per location limit basis for the 2002 to 2003 policy year.  (*See* 2002 to 2003 Policy, Ex. D to Def.'s 56(a)1 Stmt.)   From 2003 to 2009, Orenstein requested renewal of OFRA's policy from Defendant on the same terms and conditions as the expiring policy, believing that each expiring policy had been issued on a blanket limit basis.  (*See* Orenstein Aff. ¶ 6.)  Each year, Plaintiff provided valuation statements for each of its warehouses to Defendant, just as it had under the 1998 to 2001 policies that were issued on a blanket limit basis.  (*See* Orenstein Dep. Tr. at 60, 83–89.)

In 2009, Plaintiff renewed its property insurance policy with Defendant for the policy period of 2009 to 2010 (the "2009 to 2010 Policy").  (*See* 2009 to 2010 Policy, Ex. E

to Def.'s 56(a)1 Stmt.)  On December 7, 2009, Plaintiff's warehouse at 71 George Street, East Hartford, Connecticut caught fire, causing extensive damage to Plaintiff's inventory. (*See* Compl. ¶ 18.)  As a result of this damage, Plaintiff submitted a claim for cash value loss of $4,037,974 under the 2009 to 2010 Policy.  (*See id.* ¶¶ 19–20.)  While Defendant did not contest Plaintiff's loss calculation, it paid only $2,780,000 of Plaintiff's claim, as this was the location limit for the George Street warehouse under the 2009 to 2010 Policy, which provided per location limit coverage.   (*See id.* ¶ 20; *see also* 2009 to 2010 Policy Declarations, Ex. E-1 to Def.'s 56(a)1 Stmt. at 5.)  It was only then that Plaintiff became aware that it did not have a blanket property insurance policy, which would have covered the entire loss resulting from the December 7, 2009 fire.  (*See* Orenstein Aff. ¶ 5.)

## II.    Discussion[2]

Defendant moves for summary judgment on all counts, arguing that Plaintiff has failed to put forth sufficient evidence to support any of its three claims.[3]

---

[2] Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

[3] The parties have not addressed the choice of law question, but neither party disputes that Connecticut law applies to this case.

### A.        Breach of Contract

With respect to Plaintiff's breach of contract claim, Defendant argues (1) that Plaintiff cannot establish that the parties entered a contract to provide blanket limit property insurance between 2002 and 2009; (2) that the evidence of an oral agreement contrary to the unambiguous terms of the insurance policies issued by Defendant is barred by the parol evidence rule; and (3) that Plaintiff's claim is barred by the statute of limitations.[4]

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Pelletier v. Glaske*, 105 Conn. App. 77, 81 (2007).  Defendant argues that Plaintiff has produced no competent evidence proving that the parties formed an agreement for blanket limit coverage under the 2009 to 2010 Policy, and thus cannot state a claim for breach of contract.  Pursuant to Connecticut law:

> The rules governing contract are well settled.  "To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. . . .  If the minds of the parties have not met, no enforceable contract exists.

*Geary v. Wentworth Laboratories, Inc.*, 60 Conn. App. 622, 628 (2000) (quoting *L&R Realty v. Conn. Nat'l Bank*, 53 Conn. App. 524 (1999)); *see also Phelan v. Everlith*, 1 Conn. Cir. Ct. 43, 45 (1961) ("The fundamental and basic requisites that there must be an offer and an acceptance to make a valid contract have been applied to insurance contracts.").

---

[4] Because the Court concludes that summary judgment is appropriate as a result of the application of the parol evidence rule, it need not address Defendant's statute of limitations argument.

"A policy of insurance is a contract between the parties, and a renewal of the original policy is a separate and distinct contract providing coverage for a specified term or period." *Demchak v. State*, 48 Conn. Supp. 460, 467 (2003), *aff'd* 83 Conn. App. 86 (2004) (citing *Stenson v. Northland Ins. Co.*, 42 Conn. App. 177, 185 (1996)); *see also Phelan*, 1 Conn. Cir. Ct. at 45 ("A renewal policy is a separate contract, independent of the original policy, requiring its own elements of offer and acceptance."). Thus, Defendant argues that Plaintiff must prove that it made a specific offer to purchase blanket limit insurance in 2009, which Defendant accepted, in order to succeed on Count One.

In its opposition and at oral argument, Plaintiff clarified that its breach of contract claim is based on an oral offer by Orenstein to purchase blanket limit insurance, which was accepted by Lavangie's conduct in providing an insurance quote for per location limit insurance, combined with his silence regarding that material difference. (*See* Pl.'s Opp'n [Doc. # 62] at 13–15.) Plaintiff claims that each year when Orenstein requested a policy "comparable" to his previous policy he was offering to purchase blanket limit insurance, and that Lavangie's continuing silence regarding the absence of that term of coverage constituted an acceptance of that offer, creating a separate oral contract for blanket limit property insurance every year from 2002 to 2009. (*See id.* at 15–17.)

Defendant first argues that Count One is in actuality only a negligence claim masquerading as a breach of contract claim. "Connecticut recognizes a cause of action against an insurance agent for failure to obtain insurance under a theory of either professional malpractice or breach of contract." *O&G Industries v. Aon Risk Services Northeast*, 922 F. Supp. 2d 257, 269 (D. Conn. 2013) (internal citations and quotation marks omitted). However, Connecticut courts have distinguished between the two theories of recovery. As the court explained in *Aon*:

> When bringing a claim against an insurance agent for failure to obtain insurance under a breach of contract theory, the plaintiffs must allege they contracted with the insurance agent to obtain a particular result. When the allegations are couched in terms of the defendant having committed professional negligence in the procuring of the insurance policy issued to the plaintiffs instead of alleging that the defendant promised a specific result in obtaining the insurance, the claim for breach of contract should be dismissed.

*Id.* (internal citations and quotation marks omitted). Thus, unless a plaintiff expressly requests insurance under specific coverage terms, a defendant's failure to procure insurance sufficient to meet the plaintiffs needs will give rise only to a claim for professional malpractice. For example, in *Aon*, the plaintiff contracted with the defendant to procure insurance related to a construction project. Under the construction contract, the plaintiff was required to purchase certain coverages. However, the service agreement between the plaintiff and the defendant did not include a promise to procure coverage sufficient to satisfy the requirements of the construction contract, and the policy ultimately procured did not include all of the required coverages. Because the contract to procure insurance between the plaintiff and defendant made no reference to the terms of the construction contract, the Court found that the plaintiff could claim only that the defendant had contracted to recommend, negotiate, and place insurance, and to review the policies to ensure that they were accurate. Thus the plaintiff had alleged only a breach of the obligation "required of an insurance broker exercising reasonable care," which claim sounded in tort, rather than contract. *Id.* at 270. Defendant argues that similar to the circumstances in *Aon*, Plaintiff alleges at most that Lavangie did not exercise due care in procuring property insurance for Plaintiff, and thus Plaintiff's breach of contract claim is improper.

However, as Plaintiff argues in its opposition, Connecticut courts have permitted breach of contract claims against insurance agents when the insured alleges that the parties had an agreement for the agent to procure a policy that had the same terms as their then-existing insurance.  Such an agreement constitutes a request for specific terms of coverage and a "specific result" sufficient to state a claim for breach of contract.  For example, in *Erikson Metals Corp. v. McManus*, No. CV075002467S, 2008 WL 1734880 (Conn. Super. Ct. Mar. 27, 2008), the plaintiff alleged that it had contracted with the defendants, its insurance agents, "to procure insurance that was the same as it had in force at the time the defendants were engaged," and had shown its then-current policy to the defendants to ensure that they purchased the same coverage.  *Id.* at *3.   The court found that the plaintiff had sufficiently alleged "specific requests by the plaintiff for the defendants to obtain a particular result; namely, the procurement for the plaintiff of the same insurance coverages that it had immediately prior to retaining the defendants," and therefore concluded that the plaintiff had properly alleged its breach of contract claim against defendants.  *Id.*; *see also Allied Sprinkler & Mech. Sys., Inc. v. Monteplier U.S. Ins. Co.*, No. LLICV126006081S, 2012 WL 3264242, at *4 (Conn. Super. Ct. July 19, 2012) ("[T]he plaintiffs have alleged that they contracted with Woodbury to obtain a particular result; namely, the procurement for the plaintiffs of the same insurance coverages that it had in the prior two years during which Woodbury had procured appropriate insurance policies for the plaintiffs.").  The circumstances of the present case are on all fours with the facts of *Erikson Metals Corp.*, as distinguished from *Aon*.  Plaintiff here alleges that it contracted with Defendant to procure the same insurance coverage as the policies Defendant had issued from 1998 to 2001.  Therefore, Plaintiff has sufficiently alleged the

existence of an agreement for a specific result—to wit, to provide blanket limit coverage—and thus its claim properly sounds in breach of contract.

Defendant next argues that even if Plaintiff's breach of contract claim is proper, it has not proffered competent evidence to establish that such a contract existed because the parol evidence rule precludes this Court from considering evidence of a prior oral agreement that contradicts the terms of the parties' written contract.  Generally, "[a]n oral contract for insurance is merged into the terms and conditions of the written policy issued in accordance with the policy. . . . However, if the insured accepts without protest a written policy that is materially different than the oral agreement, the terms of the written policy will govern."  1A *Couch on Insurance* § 13:21 (3d ed.); *see also Kelly v. Karam*, 273 A.2d 294, 296 (Conn. App. 1970) ("As a rule, all prior negotiations become embodied in the writing when both parties enter into and sign a written contract.")  Although there is no express merger clause in the 2009 to 2010 Policy, the question of whether the parties "intended the signed writing to be the repository of their final agreement . . . is to be determined from the conduct and language of the parties and the surrounding circumstances."  Plaintiff points to no evidence of an intent to avoid the general merger rule, or to contradict Defendant's claim that the insurance policy represents a fully integrated writing, other than the lack of any merger clause.  (*See* 2009 Quote, Ex. F to Def.'s 56(a)1 Stmt. ("Coverage will be determined by the terms and conditions of the policy or policies issued by us.").)  A review of the policy shows that it contains all of the material terms one would expect to find in such a contract.  The only element of the agreement of which Plaintiff complains is not a missing term, but rather a contradictory one as to the scope of coverage provided.  Therefore, the 2009 to 2010 Policy represents a fully integrated writing to which the parol evidence rule applies.

The parol evidence rule prohibits the introduction of evidence "outside the four corners of the contract" to contradict the terms of an integrated writing.  *See Heyman Assoc. v. Ins. Co. of State of Pa.*, 231 Conn. 756, 780 (1995) ("Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant.")  However, such evidence may still be admissible to (1) explain an ambiguity in the contract; (2) prove a collateral oral agreement that does not contradict the terms of the written contract; (3) add a missing term; or (4) show mistake or fraud.  *See id.*  Thus, evidence about Orenstein and Lavangie's prior oral negotiations that contradicts the written policy may only be considered on Count One if there is an ambiguity in the 2009 to 2010 Policy.  Plaintiff does not dispute that the written terms of the 2009 to 2010 Policy unambiguously provide for insurance on a per location limit basis, rather than on a blanket limit basis.  Indeed the evidence that the written policy did not conform to Plaintiff's oral request for different coverage goes to the heart of its reformation and negligent misrepresentation claims and is admissible on those counts.  However, the Court may not consider evidence of a prior oral agreement between Lavangie and Orenstein when evaluating Plaintiff's breach of contract claim.  Without such evidence, there are no grounds on which a reasonable jury could find that the parties contracted for blanket limit coverage,[5] and Defendant's motion for summary judgment is therefore granted with respect to Plaintiff's breach of contract claim.

---

[5] Even if evidence of these negotiations were considered, Plaintiff's breach of oral contract claim would still fail.  The language of the 2009 quote Lavangie provided to Orenstein shows it to be a counteroffer to provide insurance on different terms than those requested by Plaintiff.  (*See* 2009 Quote ("Liberty Mutual Fire Insurance Company is willing to provide only the coverage described in this document.  This document is a proposal to provide coverage based solely on these specifications.  Liberty Mutual Fire Insurance Company will not be bound or obligated by proposals, specifications or requests prepared by any other party.").)  Further, Plaintiff's argument that Lavangie's

### B.      Negligent Misrepresentation

"Traditionally, an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Coppola Const. Co. v. Hoffman Enterprises Ltd. P'ship*, 309 Conn. 342, 351–52 (2013).   A negligent misrepresentation claim may be based on the defendant's omissions.   *See, e.g.*, *Brouillard v. United Illuminating Co.*, No. CV 980418595, 1999 WL 390992, at *5 (Conn. Super. Ct. June 1, 1999) ("In the present case, the plaintiff has alleged that the defendant failed to inform him of a material fact during the formation of their agreement, and that this omission had the foreseeable consequence of causing him damage. . . . [T]hese allegations sufficiently plead a cause of action for negligent misrepresentation.").   Such a cause of action based on omission arises only if the defendant had a duty to disclose the omitted information:

> The duty to disclose correct information arises from a closer degree of trust and reliance than in the ordinary business relationship.  Accordingly, a claim for negligent misrepresentation can only stand when there is a special relationship of trust and confidence which creates a duty for one party to impart correct information to another.  When the claim is failure to disclose information, the elements of the cause of action are the same.

*De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, No. CV980580129, 2002 WL 31170495, at *8 (Conn. Super. Ct. Aug. 23, 2003) (internal citations and quotation marks

---

silence constituted acceptance of its offer to buy blanket coverage is at odds with its negligent misrepresentation and reformation claims, which argue that Lavangie's silence, knowing of Plaintiff's mistaken belief that it was purchasing blanket coverage, was a fraudulent inducement for Plaintiff to enter into a contract on terms to which it had not agreed.  Certainly such a scenario cannot also establish a "meeting of the minds" necessary to show contract formation.

omitted); *see also Olson v. Accessory Control & Equipment Corp.*, 254 Conn. 145, 181 (2000) ("[A] failure to disclose can be deceptive only if, in light of all the circumstances, there is a duty to disclose.")[6]  Thus, Plaintiff contends that its negligent misrepresentation claim is based on Lavangie's failure to point out that the quotes he provided did not include the blanket limit coverage Orenstein had requested.

Whether or not Lavangie discussed the terms of the 2002 quote with Orenstein remains in dispute.  Although Lavangie was aware of Orenstein's request for blanket coverage (*see* Lavangie Dep. Tr. at 80), and claims that he would have explained the difference between the terms Orenstein requested and the terms offered in the quote (*see id.* at 89–92, 185–86), Orenstein avers that Lavangie never informed him that Defendant was not able to sell OFRA property insurance on a blanket limit basis as before, or explained to him how to identify the difference between the two coverages in the terms of a quote or policy, and states that he was not aware that he was buying property insurance on a per location limit basis in 2002.  (*See* Orenstein Aff. ¶¶ 4–5, 7.)  Thus there remains an outstanding question of material fact as to whether a negligent misrepresentation by omission causing damages occurred.

Defendant argues that even if Plaintiff could show that Lavangie committed negligent misrepresentation by omission when he failed to explain the terms of the quote he was offering as different from what Plaintiff had requested, Orenstein had a duty to read the quote and policy to confirm those terms, and thus his reliance on Lavangie's silence was unreasonable.  "The general rule is that where a person of mature years, and

---

[6] At oral argument, Defendant clarified that it does not dispute that Lavangie had a duty to use reasonable care as a professional in the insurance industry.  Rather, Defendant argues that he discharged that duty by providing a quote to Orenstein explaining that the policy would be issued on a per location limit basis.

who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is that person's duty to read it and notice of its contents will be imputed to that person if that person negligently failed to do so." *Phoenix Leasing, Inc. v. Kosinski*, 47 Conn. App. 650, 654 (1998) (internal citations and quotation marks omitted).  However, "this rule is subject to qualifications, including intervention of fraud or artifice, or mistake not due to negligence, and applies only if nothing has been said or done to mislead the person sought to be charged or to put a man of reasonable business prudence off his guard in the matter." *Ursini v. Goldman*, 118 Conn. 554 (1934).  Connecticut courts have recognized in the context of negligence suits against brokers for failure to procure insurance that conformed to the insured's specifications, the effect of the insured's failure to read and correct the policy is a defense for Defendant of contributory negligence, rather than a bar to suit.  *See Aon*, 922 F. Supp. 2d at 269; *Sipos v. Desel*, No. CV 930042371S, 1995 WL 785023, at *2 (Conn. Super. Ct. Dec. 28, 1995).

Although Orenstein does not recall whether he read the entire policy, Plaintiff has proffered the testimony of proposed expert Michael Rodman, who avers that "the language concerning the application of limits is often obscure and would not likely be detected by an untrained policyholder," and that in some cases even licensed insurance agents are unable to tell the difference between a blanket limit and a per location limit policy.  (*See* Rodman Decl., Ex. 4 to Pl.'s 56(a)2 Stmt. ¶¶ 3–4.)  Thus, Plaintiff argues that even a line-by-line reading of the quote or policy would not have alerted Orenstein to the fact that he was purchasing per location limit coverage.  In light of the disputed evidence of Lavangie's purported silence when he provided a quote for insurance that he knew to be different from Orenstein's specifications and potentially insufficient to meet Plaintiff's needs, and the proffered expert evidence regarding the futility of reading the language

concerning the application of limits in an attempt to discover whether coverage was offered on a per location limit or blanket limit basis, there remains an outstanding factual dispute as to whether Plaintiff's reliance on Lavangie's silence was reasonable under the circumstances.

Finally, Defendant argues that even if the Court finds that Plaintiff has established its negligent misrepresentation claim, this claim is barred by the three-year Connecticut statute of limitations for negligence actions, *see* Conn. Gen. Stat. § 52-584, because the only negligent omission identified by Plaintiff occurred in 2002. However, Plaintiff responds that Lavangie's silence as to the lack of blanket limit coverage each year when Plaintiff renewed its policy constituted a new misrepresentation. Orenstein avers that each year he asked Lavangie to renew the policy based on the terms of the expiring policy, which he believed provided blanket limit coverage, and that at all times he believed that he was requesting blanket limit coverage. (Orenstein Aff. ¶ 6.) Considering the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that because Lavangie knew that Plaintiff wanted blanket limit coverage in 2002 and he instead provided a per location limit policy that he had previously advised Plaintiff against procuring, without drawing Plaintiff's attention to this change, and without Plaintiff ever mentioning the change in the policy terms, Lavangie knew that Plaintiff continued to believe that it was insured on a blanket limit basis. A jury could further infer that Lavangie understood Plaintiff believed it was requesting a blanket limit policy in 2009 when Orenstein requested a renewal based on the same terms as the expiring policy, but he never disabused Plaintiff of its mistaken belief. Finally, a jury could conclude, based on the testimony of Plaintiff's expert that, given the complexity of the insurance policy's limitation terms, Orenstein reasonably relied on Lavangie, with whom he had done

business for years, to explain those policy terms.   Therefore, Defendant's motion for summary judgment is denied as to Count Two.

### B.      Reformation

"A cause of action for reformation of contract rests upon the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other." *Trenwick America Reinsurance Corp. v. W.R. Berkley Corp.*, 138 Conn. App. 741, 749 (2012) (quoting *Greenwich Contracting Co. v. Bonwit Construction Co.*, 156 Conn. 123, 126–27 (1968)).   The party requesting reformation bears the burden of proving that the relief is justified by "clear, substantial and convincing" evidence.   *Lopinto v. Haines*, 185 Conn. 527, 534 (1981).   Defendant argues that Plaintiff's claim for reformation fails because its offer of proof does not match up with its pleadings, and because a reasonable factfinder could not conclude that Plaintiff had established by clear and convincing evidence fraud or inequitable conduct on the part of Defendant. [7]

In the Complaint, Plaintiff alleges that "[t]hrough inadvertent mutual mistake by the Plaintiff and Defendant, the property insurance policies Defendant sold to Plaintiff . . . do not reflect the mutual intent and agreement."   (Compl. ¶ 43.)   In response to Defendant's argument in its memorandum that Plaintiff cannot show mutual mistake and that the reformation claim therefore fails, Plaintiff clarifies that its reformation claim is

---

[7] In its reply, Defendant maintains that Plaintiff is not entitled to the equitable relief of reformation because it acted inequitably by failing to ever read its insurance policies.   However, it is well-settled law in Connecticut that negligent failure to read the text of an agreement does not as a matter of law bar a claim for reformation.   *See Voll*, 223 Conn. at 428 (citing *Essex v. Day*, 52 Conn. 482 (1885)).

not based on mutual mistake, but rather on Plaintiff's mistake coupled with Defendant's fraudulent or inequitable conduct.

While Plaintiff's Complaint mentions mutual mistake in its reformation claim, it also lays out the sequence of events giving rise to the alleged mistake and inequitable conduct:  Plaintiff had previously purchased blanket limit coverage from Defendant; it had done so based on the advice of Lavangie; it requested coverage comparable to these policies from 2002 to 2009, believing that it was requesting and receiving blanket limit coverage. (*See* Compl. ¶¶ 11–13, 15–17.)   The Complaint further alleges that neither Lavangie nor anyone else employed by Defendant ever informed Plaintiff that the new policies did not include blanket limit coverage.  (*See id.* ¶¶ 16–17.)  Defendant claims in its reply, that Plaintiff has failed to satisfy the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."   In reformation of contract actions, courts in this circuit have found that pleadings satisfy Rule 9(b) where the plaintiff identifies the precise nature of the mistake, and evidence of its contrary intent, in addition to identifying "the precise statements made that contain misrepresentations, as well as the parties to the conversation and the time and place the statements were made."  *NCC Sunday Inserts, Inc. v. World Color Press, Inc.*, 759 F. Supp. 1003, 1003 (S.D.N.Y. 1990); *see also Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 440 (E.D.N.Y. 2011).   Here, Plaintiff identified Lavangie as the source of the material omission, and identified the blanket coverage limit versus per location limit as the source of its mistake.  This is sufficient to satisfy the requirements of Rule 9(b).

Defendant next argues that even if Plaintiff had properly pled its reformation claim, it has not shown by clear and convincing evidence that Defendant committed fraud or inequitable conduct.   Connecticut courts have long recognized that for the purposes of reformation, fraud or inequitable conduct "includes not only [knowing] misrepresentation . . . but also concealment or nondisclosure by a party who knows that the other party is acting under a mistake as to material facts."  *Home Owners' Loan Corp. v. Stevens*, 120 Conn. 6 (1935).  "Where, unknown to one of the parties, an instrument contains a mistake rendering it at variance with the prior understanding and agreement of the parties, and the other party learns of this mistake at the time of the execution of the instrument and later seeks to take advantage of it, equity will reform the instrument so as to make it conform to the prior understanding."  *Id.*   As discussed above, when considered in the light most favorable to Plaintiff, the facts in the record permit the inference that Lavangie knew Orenstein believed he was receiving blanket limit coverage and failed to inform him of his mistake, leaving Plaintiff with inadequate coverage when the loss claim was submitted.  Such circumstances could justify reformation.  However, whether the evidence, which consists mostly of the testimony of Orenstein and Lavangie, is clear and convincing depends on credibility determinations, which may not appropriately be made at the summary judgment stage.  Therefore, Defendant's motion for summary judgment is denied as to Plaintiff's reformation claim.

III.     **Conclusion**

For the foregoing reasons, Defendant's Motion [Doc. # 61] for Summary Judgment is GRANTED with respect to Count One, and DENIED with respect to Counts Two and Three.


IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 31st day of October, 2013.